IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HOLLIE SCHULTZ, both individually and derivatively on behalf of BABY GIZMO COMPANY, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 08 CV 2061 |
| HEATHER MACLEAN and THOMAS NELSON, INC., | ) ) ) | The Honorable Harry D. Leinenweber |
| Defendants. | ) ) | Magistrate Judge Cox |

### HEATHER MACLEAN'S MOTION TO DISMISS COMPLAINT PURSUANT TO FED. R. CIV P. 12(B)(1) AND (B)(6)

Defendant, HEATHER MACLEAN, by her attorneys, Goldstine, Skrodzki, Russian, Nemec and Hoff, Ltd., and pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, hereby moves to dismiss, in its entirety, the Complaint filed by Plaintiff, HOLLIE SCHULTZ, both individually and derivatively on behalf of BABY GIZMO COMPANY, and in further support hereof, states as follows:

### INTRODUCTORY STATEMENT

Plaintiff, HOLLIE SCHULTZ ("SCHULTZ"), and Defendant, HEATHER MACLEAN ("MACLEAN"), are sisters. As alleged in the Complaint, SCHULTZ and MACLEAN are also equal owners of BABY GIZMO COMPANY, an Illinois corporation ("GIZMO CO."), which offers product-buying advice via an internet site. In the Complaint, SCHULTZ alleges that MACLEAN has usurped corporate opportunities of GIZMO CO., breached fiduciary duties, misappropriated and/or converted funds and intellectual property, and breached a contract by failing to split profits. Also at issue in the Complaint is ownership rights to "The Baby Gizmo Buying Guide" (the "Gizmo Book") – a book published in 2008 by Defendant, THOMAS NELSON, INC. SCHULTZ claims

to be a co-author of the Gizmo Book and complains that MACLEAN has refused to split profits from the book with SCHULTZ and otherwise has asserted that Plaintiffs are not entitled to publish or display the Gizmo Book on the GIZMO COMPANY's website.

The Complaint asserts the following causes of action: (1) declaratory judgment of copyright ownership; (2) declaratory judgment of non-infringement; (3) breach of fiduciary duty and duty to account; (4) breach of contract; (5) quantum meruit; (6) conversion; and (7) constructive trust/accounting.  Count I purports to be brought under the Copyright Act.  Count II purports to be brought pursuant to the Declaratory Judgment Act, 28 USC § 2201.  The remaining claims are state common law claims, over which this Court purportedly has pendent jurisdiction.  As set forth below, this matter should be dismissed for lack of subject matter jurisdiction.  Additionally, or alternatively, the action should be dismissed because the Complaint fails to state any claims upon which relief can be granted.

## ARGUMENT PURSUANT TO FED. R. CIV. P. 12(B)(1)

Subject matter jurisdiction of this action is solely premised upon the Copyright Act, 17 USC § 101, et seq., and the purported claim alleged in Count I pursuant to the Copyright Act. The Complaint, however, is devoid of any assertion that a copyright has been registered with regard to the Gizmo Book. In other words, there is no copyright of which Plaintiff can claim to be a co-owner. The registration of a copyright is a condition precedent to the right to bring a claim for copyright infringement.  *See* 17 USC § 411(a).  Indeed, the Complaint does not even allege that the Gizmo Book is copyrightable.

Moreover, while it is true that federal courts have original and exclusive jurisdiction over cases arising under the Copyright Act, it is also true that "a case does not automatically fall within the jurisdiction of the federal courts simply because it concerns a copyright." *Reinhardt v. Wal-Mart*

*Stores, Inc.*, — F.Supp.2d —, 2008 WL 1781232 at *2 (S.D.N.Y. 2008)[1]; *see also Jasper v. Bovina Music, Inc.*, 314 F.3d 42 (2nd Cir. 2002); *Saturday Evening Post Co. v. Rumbleseat Press, Inc.*, 816 F.2d 1191 (7th Cir. 1987). Significantly, where the claim of ownership arises out of a purported contractual relationship, federal jurisdiction will not lie. 2008 WL 1781232 at *2.

At the heart of this case is a purported oral agreement between SCHULTZ and MACLEAN. SCHULTZ alleges in Paragraph 8 of the Complaint that she and MACLEAN "orally agreed to equally split all profits from their joint work together . . . ." SCHULTZ further alleges that "Gizmo Company money was used to develop and promote the Gizmo Book" and that the "Gizmo Company is deadlocked in its decision making." *See* Complaint at ¶¶ 6, 11. Questions regarding whether SCHULTZ is a co-owner of the Gizmo Book or is entitled to profits from the Gizmo Book or is entitled to use or publish the Gizmo Book arise principally out of the business relationship between the Parties and the intentions of the Parties. As such, this Court should decline to exercise jurisdiction over this action because the dispute over ownership of the purported copyright does not arise under the Copyright Act..

Furthermore, as set forth below, SCHULTZ fails to state a claim under the Copyright Act. Count II is brought pursuant to the Declaratory Judgment Act, but it is established that the Declaratory Judgment Act is not an independent source of federal subject matter jurisdiction. *See GNB Battery Technologies, Inc. v. Gould, Inc.*, 65 F.3d 615, 619 (7th Cir. 1995). Plaintiff's remaining claims are state common law claims. Thus, because Plaintiff has not stated a claim under the Copyright Act and because this Court does not have jurisdiction by virtue of any of the remaining claims, this action should be dismissed in its entirety for lack of jurisdiction.

---

[1]　　　All unpublished decisions cited herein are attached hereto as Exhibit A.

3

**ARGUMENT PURSUANT TO FED. R. CIV. P 12(B)(6)**

As set forth in Rule 8 of the Federal Rules of Civil Procedure, federal courts simply require notice pleading. However, "[e]ven the liberal notice pleading allowed by the federal rules requires the complaint to include the operative facts upon which a plaintiff bases his claim." *Rodgers v. Lincoln Towing Service, Inc.*, 771 F.2d 194, 198 (7th Cir. 1985). A plaintiff must allege "sufficient facts to outline the cause of action." *McBride v. Lindsay*, 718 F.Supp. 24, 26 (N.D.Ill. 1989). Furthermore, "the court is not required to accept legal conclusions either alleged or inferred from pleaded facts." *Id.* As set forth below, the Complaint filed by SCHULTZ does not satisfy this liberal pleading standard.

**I.    Plaintiff Fails Adequately To Allege That She Is A Co-Author Of The Gizmo Book.**

In Count I of the Complaint, SCHULTZ seeks a declaration that she is a "joint author" or co-author of the Gizmo Book such that she is a co-owner of the book within the meaning of 17 USC 201(a). Section 201(a) of the Copyright Act provides that "the authors of a joint work are coowners of copyright in the work." 17 USC § 201. Section 101 of the Copyright Act defines "joint work" as "a work prepared by two or more *authors* with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole." 17 USC § 101 (emphasis added). Thus, the plain language of the Copyright Act clearly demonstrates that SCHULTZ must allege and demonstrate the she is an author of the Gizmo Book.

It is well established that "author" is "the party who actually creates the work, that is, the person who translates an idea into a fixed, tangible expression entitled to copyright protection." *Glovaroma, Inc. v. Maljack Productions, Inc.*, 71 F.Supp.2d 846, 850 (N.D.Ill. 1999). It has long been recognized that "[b]y definition, the party raising the joint-authorship claim (or defense) must be an 'author' of the copyrightable work." *Respect Incorporated v. Committee on the Status of*

*Women d/b/a Project Respect*, 815 F.Supp. 1112, 1120 (N.D.Ill. 1993). The purported joint-author must have contributed something "original" to the work. *Id.* Moreover, the contribution must be significant. *See Seshadri v. Kasraian*, 130 F.3d 798, 803 (7th Cir. 1997).

Expounding upon the requirements of a claim of joint-authorship, it was established by the Seventh Circuit Court of Appeals in 1994 that in order to prevail on a claim of joint-authorship, a purported joint-author must establish (1) that there was an intent by all authors, but particularly by the dominant author, at the time of writing that the contributions of all authors would be merged into an integrated unit, and (2) that the co-author claimant's contributions to the work are independently copyrightable. *See Erickson v. Trinity Theatre, Inc.*, 13 F.3d 1061 (7th Cir. 1994); *see also Napoli v. Sears, Roebuck and Co.*, 858 F.Supp. 101, 103 (N.D.Ill. 1994) (recognizing that Seventh Circuit has adopted copyrightable subject matter test, which requires that in order to be joint work, each parties' contribution must represent original expression that could stand on its own as subject matter of copyright, and parties must have intended to be joint authors at time work was created); *JCW Investments, Inc. v. Novelty, Inc.*, 289 F.Supp.2d 1023, 1032 (N.D.Ill. 2003) (individuals can be coauthors if "they made objective expressions of a shared intent to be coauthors" and each individual's contribution is "independently copyrightable."); *Ahn v. Midway Mfg. Co.*, 965 F.Supp. 1134, 1139 (N.D.Ill. 1997) ("a collaborative contribution will not produce a joint work, and a contribution will not obtain a co-ownership interest, unless the contribution represents original expression that could stand on its own as the subject matter of copyright."). Collaboration alone is insufficient to create joint work. *Erickson*, 13 F.3d at 1068. "An author provides more than direction or ideas . . . [and] an important indicator of authorship is a contributor's decision-making authority over what changes are made and what is included in a work." *JCW*, 289 F.Supp.2d at

1031-32; *see also Aalmuhammed v. Lee*, 202 F.3d 1227, 1233-34 (9th Cir. 1999) (whether contributor exercised control over work is a factor in determining joint-authorship).

Thus, SCHULTZ must allege and demonstrate that she contributed "independently copyrightable" work product to the Gizmo Book and exercised control over the work, such that she can be considered an "author" of the Gizmo Book, and that she and MACLEAN made objective manifestations of a shared intent to be coauthors at the time that the book was written. SCHULTZ, however, has merely baldly alleged that she and MACLEAN jointly wrote and co-authored the Gizmo Book. *See* Complaint at ¶ 10. SCHULTZ has not alleged what contributions she purportedly made to the Gizmo Book. SCHULTZ has not alleged that her contributions would have been independently copyrightable. Indeed, SCHULTZ has not even alleged that the Gizmo Book as a whole is copyrighted or is copyrightable. Moreover, SCHULTZ has not alleged anything to demonstrate that there was an intent by MACLEAN at the time of writing the Gizmo Book that she and SCHULTZ would be joint authors. As such, SCHULTZ has failed to state a claim in Count I for copyright ownership pursuant to the Copyright Act. *See e.g., Brown v. Flowers*, 196 Fed.Appx. 178, 181 (4th Cir. 2006) (concluding that plaintiff's complaint fails under Rule 12(b)(6) to state a copyright claim in the joint-work context because it lacks even a single allegation that he made any creative, original, or expressive contribution to the song recordings at issue).

## II.    <u>Count II Of The Complaint Fails To State A Claim For Declaratory Relief.</u>

Count II of the Complaint is brought pursuant to the Declaratory Judgment Act and seeks a declaration of non-infringement. As an initial matter, it is again noteworthy that Plaintiff has failed to allege the existence of a copyright. "The Declaratory Judgment Act is intended to allow a party 'who is reasonably at legal risk because of an unresolved dispute, to obtain judicial resolution of that dispute without having to await the commencement of legal action by the other

6

side.'" *Amerimax  Real Estate Partners, Inc. v. RE/MAX Int'l, Inc.*, 2006 WL 2794934 at *3 (N.D.Ill. 2006) (internal citation omitted).   It is well-established that to state a claim under the Declaratory Judgment Act, a plaintiff must demonstrate "a real and reasonable apprehension" that he will be subject to liability. *Thomas & Betts Corp. v. Panduit Corp.*, 48 F.Supp.2d 1088 (N.D.Ill. 1999); *Planet Hollywood (Region IV), Inc. v. Hollywood Casino Corp.*, 80 F.Supp.2d 815, 873 (N.D.Ill. 1999).  In the context of claims involving patents or trademarks, a plaintiff must also demonstrate that he has engaged in a course of conduct which has brought him into adversarial conflict with the defendant.  80 F.Supp.2d at 873; 2006 WL 2794934 at *3.  Given the similarity between copyrights, trademarks and patents, the same test should apply to claims seeking a declaration of non-infringement of a copyright.

The Complaint does not allege what action(s) SCHULTZ has taken for which she seeks a declaration of non-infringement.  The Complaint also does not allege a real and reasonable apprehension of liability arising from whatever actions are being taken by SCHULTZ for which she seeks protection.  Significantly, SCHULTZ's claim that she is a co-owner or co-author of the Gizmo Book directly contradicts any claim that could be made by SCHULTZ that she had a reasonable apprehension of liability. It is established that a co-owner of a copyright may not be sued for infringement.  *See Team Play, Inc. v. Boyer*, 391 F.Supp.2d 695, 705 (N.D.Ill. 2005); *see also Cambridge Literary Properties, Ltd. v. Goebel Porzellanfabrik GmbH & Co. KG*, 510 F.3d 77, 98 (1st Cir. 2007).  SCHULTZ' unsupported assertion that there is an actual controversy between the parties is nothing more than a legal conclusion.  Count II of the Complaint fails to state a claim for declaratory relief and should be dismissed.

**III.**   <u>**Count III Fails To State A Claim For Breach Of Fiduciary Duty.**</u>

Count III of the Complaint asserts a claim for breach of fiduciary duty and breach of duty to account.  Paragraph 27 of the Complaint conclusorily declares four reasons why MACLEAN owed fiduciary duties to Plaintiff: (1) because SCHULTZ placed trust and confidence in MACLEAN; (2) by virtue of MACLEAN's status as an officer and co-owner of GIZMO CO.; (3) as a joint venturer; and (4) because MACLEAN is SCHULTZ' sister. The Complaint is wholly devoid of any allegations concerning the purported "trust and confidence" placed in MACLEAN by SCHULTZ.  Indeed, aside from the bare conclusory allegations that MACLEAN owed a fiduciary duty to SCHULTZ, there are no allegations in the Complaint from which to determine the existence or scope of any purported fiduciary duty.

Count III of the Complaint generally alleges that MACLEAN has failed to share profits, has failed to account for income received from the Gizmo Book and other purported property of GIZMO CO., has usurped corporate opportunities (namely, Little Laureate), and has misappropriated assets of GIZMO CO.  The focuses of the claim appear to be that MACLEAN has not shared profits from the Gizmo Book and has usurped a corporate opportunity of GIZMO CO. by operating Little Laureate by herself.  With regard to the first issue, as set forth above, SCHULTZ has not sufficiently alleged any ownership interest in the Gizmo Book.  This failure also defeats SCHULTZ' apparent complaint regarding MACLEAN's action in filing individually for trademark protection of the Gizmo Book.

With regard to the purported corporate opportunity usurped by MACLEAN, the Complaint fails to demonstrate that the Little Laureate business constitutes a "corporate opportunity" of GIZMO CO.  "A corporate opportunity exists when a proposed activity is reasonably incident to the corporation's present or prospective business and is one in which the corporation has the capacity

to engage." *Lindenhurst Drugs, Inc. v. Becker*, 154 Ill.App.3d 61, 67, 506 N.E.2d 645 (2[nd] Dist. 1987).  Further, "[i]n determining whether an officer may take advantage of a business opportunity in which a corporation is interested, courts consider whether the corporation had an interest, actual or in expectancy, in the opportunity, and whether the acquisition thereof by the officer would hinder or defeat plans and purposes of the corporation in carrying on or developing the legitimate business for which it was created." *Id.*

The Complaint alleges that GIZMO CO. is in the business of providing product buying advice via an internet site. *See* Complaint at ¶ 9.  The Little Laureate is briefly described as a "video CD program for young children."  *See* Complaint at ¶ 15(c). It is patently clear that the Little Laureate is not an activity that is reasonably incident to the GIZMO CO.'s business of offering product advice.  The Complaint is devoid of any allegations that GIZMO CO. had the capacity, financial or otherwise, to engage in the activity.  It is not alleged that Little Laureate engages in the same line of business as GIZMO CO. or otherwise competes with GIZMO CO.  The Complaint does not allege that GIZMO CO. had any interest or expectation regarding the Little Laureate business. The Complaint does not allege or demonstrate that MACLEAN's purported usurpation of the Little Laureate opportunity hinders or defeats the legitimate business purpose for which GIZMO CO. was created – namely, the provision of product buying advice via the internet.  Furthermore, SCHULTZ fails to allege any action on the part of MACLEAN that usurped any corporate opportunities of GIZMO CO.

The Complaint otherwise generically alleges that MACLEAN has misappropriated assets of GIZMO CO. Aside from a generic claim that MACLEAN has misappropriated thousands of dollars from GIZMO CO.'s bank account, the Complaint does not specifically allege what assets have been misappropriated.

Because the Complaint fails to adequately allege the existence of a fiduciary relationship and fails to allege any breach of the purported fiduciary relationship, Count III of the Complaint should be dismissed. At a minimum, to the extent that the claim is premised upon the usurpation of a corporate opportunity in connection with the Little Laureate business, MACLEAN requests that this Court dismiss that aspect of the claim and strike all allegations concerning the Little Laureate business.

## IV.    The Complaint Fails To Allege The Existence Of And Terms Of A Contract.

Paragraph 32 of Count IV of the Complaint declares that "Schultz and Maclean orally agreed to equally split all profits from their joint work together, including all Gizmo Company profits." SCHULTZ conclusorily declares that this constitutes a legally valid and enforceable contract and that she has fully performed under the purported contract. The Complaint, however, supplies no details regarding the material terms of the purported contract or when the parties entered into the purported contract. Furthermore, the Complaint contains no factual allegations regarding SCHULTZ' purported performance. Finally, it is unclear from the Complaint what is the purported breach. Paragraph 34 asserts that "Maclean has breached the parties' contract by failing to split profits." It is unclear whether SCHULTZ is complaining about profits from the Gizmo Book or general profits from the GIZMO CO.

"To plead a contract claim, a plaintiff must make allegations raising an inference that: (1) a contract with *definite and certain terms* existed between the parties; (2) the plaintiff performed its obligations under the contract; (3) the defendant breached its obligations under the contract; and (4) the plaintiff suffered damages as a result." *Hoopla Sports and Entertainment, Inc. v. Nike, Inc.*, 947 F.Supp. 347, 356 (N.D.Ill. 1996) (dismissing breach of contract claim for failure by claimant to plead the essential terms of the contract and to plead that it performed its own obligations under the

contract).  "In order to properly plead breach of contract under Illinois law, initially, a plaintiff must allege facts that support a reasonable inference that a contract in fact existed between the plaintiff and defendant."  *Cobb-Alvarez v. Union Pacific Corp.*, 962 F.Supp. 1049 (N.D.Ill. 1997).  The Complaint does nothing more than conclusorily declare that a contract exists between SCHULTZ and MACLEAN.  Although the pleading standard is low, "a complaint must set forth factual allegations that outline the essential elements of the claim, and legal conclusions lacking adequate support should not be considered."  *Hoopla*, 947 F.Supp. at 356.  Furthermore, SCHULTZ' bald assertion that she has performed all requirements of her under the parties's agreement, without any description of what she was obligated to do under the contract, is insufficient to satisfy the second element of the claim.  *Id.*  Accordingly, Count IV of the Complaint must be dismissed for failure to state a claim.

**V.    The Complaint Fails To State A Claim For Quantum Meruit.**

Count V asserts an alternative claim for quantum meruit.  Specifically, SCHULTZ asserts that she is entitled to fair compensation for the "value of work, labor, capital, and services contributed by Plaintiffs to the creation of the Gizmo Book and Little Laureate."  *See* Complaint at ¶ 36.  In Illinois, "the elements of quantum meruit are that: (1) the plaintiff rendered services; (2) the defendant received the benefit of those services; and (3) the defendant's retention of those services without giving compensation in exchange will be unjust."  *Ogdon v. Hoyt*, 409 F.Supp.2d 982, 990 (N.D.Ill. 2006).  Once again, the Complaint is devoid of any allegations regarding the work, labor, capital or services contributed by SCHULTZ to either the Gizmo Book or the Little Laureate enterprise.  As such, the Complaint does not state a claim for quantum meruit.

**VI.**    **The Complaint Fails To State A Claim For Conversion.**

Count VI of the Complaint generically complains that "Maclean has wrongfully exercised dominion and control over Plaintiffs' property as alleged herein." *See* Complaint at ¶ 39.  Count VI does not specifically allege what property is the subject of the claim.  The possibilities include the purported copyright, profits from the Gizmo Book, the Little Laureate enterprise, GIZMO CO.'s profits, and assets, including money from a bank account.

"To prove conversion, a plaintiff must establish that (1) he has a right to the property; (2) he has an absolute and unconditional right to the immediate possession of the property; (3) he made a demand for possession; and (4) the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property." *Cirrincione v. Johnson,* 184 Ill.2d 109, 114, 703 N.E.2d 67 (1998).  "[T]the subject of conversion is required to be an identifiable object of property of which the plaintiff was wrongfully deprived."  *In re Thebus*, 108 Ill.2d 255, 260, 483 N.E.2d 1258 (1985).  In other words, a claim for conversion will not lie where the subject matter is an intangible property right.  *See The Film and Tape Works, Inc. v. Junetwenty Films, Inc.*, 368 Ill.App.3d 462, 475, 856 N.E.2d 612 (1st Dist. 2006).  The Complaint does not allege the conversion of any tangible property interests.  The copyright and Little Laureate business opportunity are intangible.  Further, the Complaint does not specify what assets or purported sum of money were allegedly converted by MACLEAN.

With regard to the specific elements of conversion, SCHULTZ cannot allege that she has an absolute and unconditional right to the possession of the property that has allegedly been converted.  SCHULTZ alleges that she is the co-owner of GIZMO CO. and the Gizmo Book with MACLEAN.  As such, MACLEAN clearly would have the right to exercise dominion and control over property of which she is, at a minimum, a co-owner.  Indeed, with regard to the purported copyright, it is

established that co-owners of a copyright are treated as tenants in common with each co-owner having an independent right to use or license the use of work.  *See Erickson*, 13 F.3d at 1068.  Accordingly, even assuming that SCHULTZ can establish that she is a co-owner of the copyright in the Gizmo Book, she cannot establish that MACLEAN has "wrongfully or without authorization" assumed dominion or control over the copyright or the book.

As set forth above, the Complaint fails to allege a claim for usurpation of the Little Laureate opportunity because it fails to allege that the Little Laureate was a "corporate opportunity" belonging to GIZMO CO.  As such, there can also be no claim for conversion of the opportunity.  With regard to the purported assets of GIZMO CO., the Complaint specifically alleges that MACLEAN is an officer and equal co-owner of the company.  Accordingly, the Complaint fails to allege an essential element for a claim of conversion of such assets – namely, that MACLEAN has taken any action with regard to GIZMO CO.'s assets wrongfully or without authorization.

## VII.  Constructive Trust Is Not An Independent Cause Of Action And The Complaint Fails To State A Claim For An Accounting Because It Fails To Assert That Plaintiff Does Not <u>Have An Adequate Remedy At Law.</u>

Count VII of the Complaint purports to assert a claim for constructive trust and accounting.  However, "[a] constructive trust is an equitable remedy, not an independent cause of action." *Fujisawa Pharmaceutical Co., Ltd. v. Kapoor*, 16 F.Supp.2d 941, 952 (N.D.Ill. 1998); *3Com Corp. v. Electronics Recovery Specialists, Inc.*, 104 F.Supp.2d 932, 942 (N.D.Ill. 2000).  As such, the claim for constructive trust must be dismissed.

"A claim for an equitable accounting may be maintained only in 'the absence of an adequate remedy at law.'" *Profile Products, LLC v. Soil Management Technologies, Inc.*, 155 F.Supp.2d 880, 885 (N.D. Ill. 2001).  SCHULTZ' request for an accounting is premised upon the allegation that she has been deprived of information about profits, sales, royalties and projected sales of the Gizmo

Book.  *See* Complaint at ¶ 44. The claim, of course, presumes that SCHULTZ is entitled to such

information.  The Complaint does not allege that Plaintiffs do not have an adequate remedy at law.

The claim is duplicative of the claim for breach of fiduciary duty and duty to account set forth in

Count III.  Moreover, to the extent that SCHULTZ fails to state a claim of co-ownership or co-

authorship of the Gizmo Book, her claim for an accounting must also fail.  Accordingly, Count VII

must be dismissed.

### CONCLUSION

For the foregoing reasons, Defendant, HEATHER MACLEAN, respectfully requests that

this Court enter an Order dismissing the Complaint filed by Plaintiff, HOLLIE SCHULTZ, in its

entirety.

Dated: May 30, 2008                                    HEATHER MACLEAN,


                                                        By:   /s/ Sara L. Spitler
                                                             One of Her Attorneys

Goldstine, Skrodzki, Russian,
 Nemec and Hoff, Ltd.
Richard J. Nogal
Sara L. Spitler
Attorneys for MACLEAN
835 McClintock Drive
Burr Ridge, Illinois 60527
(630)655-6000

**Exhibit A**
**Part 1**

Westlaw.

--- F.Supp.2d ----                                                                                    Page 1
--- F.Supp.2d ----, 2008 WL 1781232 (S.D.N.Y.), 86 U.S.P.Q.2d 1496
(Cite as: --- F.Supp.2d ----, 2008 WL 1781232 (S.D.N.Y.))

Reinhardt v. Wal-Mart Stores, Inc.
S.D.N.Y.,2008.

United States District Court,S.D. New York.
Richard REINHARDT (p/k/a Richie Ramone and
Richie Beau), Plaintiff,
v.
WAL-MART STORES, INC., Apple, Inc., Realnet-
works, Inc., Estate of John Cummings (a/k/a John
Ramone and Johnny Ramone), Taco Tunes, Inc .,
Ramones Productions, Inc., Herzog & Strauss, and
IRA Herzog, Defendants.
No. 07 Civ. 8233(SAS).

April 18, 2008.

**Background:** Member of punk rock band, as owner
of copyright in music, brought action against busi-
nesses which distributed sound recordings and oth-
er digital media over Internet and in other electron-
ic forms alleging copyright infringement. Defend-
ants brought motion to dismiss.

**Holdings:** The District Court, Shira A. Scheindlin,
J., held that:
(1) owner stated federal claim under Copyright Act;
(2) owner's pursuit of other grievances in state
court against licensees that were related to same re-
cording agreement did not bar owner's right to seek
remedies in federal court for alleged violations of
Copyright Act;
(3) phrases "all forms" "now or hereafter known,"
when referring to forms of reproduction authorized
by licensing agreement, created expansive rather
than restrictive conveyance of rights, and thus
covered future technologies, including alleged di-
gital download form; and
(4) recording agreement that was heavily refer-
enced by copyright owner in his complaint alleging
copyright infringement was incorporated by refer-
ence and thus could be considered by court on mo-
tion to dismiss.

Motion granted.

**[1] Federal Courts 170B ⚖══213**

170B Federal Courts
    170BIII Federal Question Jurisdiction
        170BIII(C) Cases Arising Under Laws of the
United States
            170Bk213 k. Copyright Laws. Most Cited
Cases
If a dispute is about the ownership of a copyright,
and turns on the interpretation of a contract, then no
federal question is presented under the Copyright
Act. 17 U.S.C.A. § 101 et seq.; 28 U.S.C.A. §
1338(a).

**[2] Federal Courts 170B ⚖══213**

170B Federal Courts
    170BIII Federal Question Jurisdiction
        170BIII(C) Cases Arising Under Laws of the
United States
            170Bk213 k. Copyright Laws. Most Cited
Cases
Unless a complaint asserts a remedy expressly
granted by the Copyright Act, such as damages for
infringement, or requires interpretation of the
Copyright Act, there is no Copyright Act federal
jurisdiction. 17 U.S.C.A. § 101 et seq.; 28 U.S.C.A.
§ 1338(a).

**[3] Federal Civil Procedure 170A ⚖══1832**

170A Federal Civil Procedure
    170AXI Dismissal
        170AXI(B) Involuntary Dismissal
            170AXI(B)5 Proceedings
                170Ak1827 Determination
                    170Ak1832 k. Matters Considered
in General. Most Cited Cases
When deciding a motion to dismiss for failure to
state a claim upon which relief can be granted, a
court is not limited to the face of the complaint, but
also may consider any written instrument attached
to the complaint, statements or documents incorpor-
ated into the complaint by reference, and docu-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----, 2008 WL 1781232 (S.D.N.Y.). 86 U.S.P.Q.2d 1496
**(Cite as: --- F.Supp.2d ----, 2008 WL 1781232 (S.D.N.Y.))**

ments possessed by or known to the plaintiff and upon which it relied in bringing the suit. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

**[4] Federal Civil Procedure 170A ☞1832**

170A Federal Civil Procedure
  170AXI Dismissal
    170AXI(B) Involuntary Dismissal
      170AXI(B)5 Proceedings
        170Ak1827 Determination
          170Ak1832 k. Matters Considered in General. Most Cited Cases
Before materials outside the record may become the basis for a dismissal for failure to state a claim upon which relief can be granted, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

**[5] Federal Civil Procedure 170A ☞673**

170A Federal Civil Procedure
  170AVII Pleadings and Motions
    170AVII(B) Complaint
      170AVII(B)1 In General
        170Ak673 k. Claim for Relief in General. Most Cited Cases

**Federal Civil Procedure 170A ☞1772**

170A Federal Civil Procedure
  170AXI Dismissal
    170AXI(B) Involuntary Dismissal
      170AXI(B)3 Pleading, Defects In, in General
        170Ak1772 k. Insufficiency in General. Most Cited Cases
Although a complaint need not provide detailed factual allegations to avoid dismissal for failure to state a claim upon which relief can be granted, it must amplify a claim with some factual allegations to render the claim plausible; the complaint must provide the grounds upon which the plaintiff's claim rests through factual allegations sufficient to raise a right to relief above the speculative level.

Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

**[6] Copyrights and Intellectual Property 99 ☞44**

99 Copyrights and Intellectual Property
  99I Copyrights
    99I(E) Transfer
      99k43 Assignments or Transfers
        99k44 k. In General. Most Cited Cases
A copyright owner may convey the bundle of discrete rights regarding the owner's ability to use his property, either temporarily or permanently, to another, although the copyright owner may not convey more than the copyright protects. 17 U.S.C.A. § 501(b).

**[7] Copyrights and Intellectual Property 99 ☞66**

99 Copyrights and Intellectual Property
  99I Copyrights
    99I(J) Infringement
      99I(J)1 What Constitutes Infringement
        99k66 k. Musical Works. Most Cited Cases
To succeed on a claim for infringement under the Copyright Act, a plaintiff must show that he owned a valid copyright to the songs and defendants copied original constituent elements of these songs. 17 U.S.C.A. § 501(b).

**[8] Copyrights and Intellectual Property 99 ☞75**

99 Copyrights and Intellectual Property
  99I Copyrights
    99I(J) Infringement
      99I(J)2 Remedies
        99k72 Actions for Infringement
          99k75 k. Defenses. Most Cited Cases
Where an author brings a copyright infringement action against a purported licensee, the license may be raised as a defense. 17 U.S.C.A. § 501(b).

**[9] Copyrights and Intellectual Property 99 ☞**

83(1)

99 Copyrights and Intellectual Property
   991 Copyrights
      991(J) Infringement
         991(J)2 Remedies
            99k72 Actions for Infringement
               99k83 Evidence
                  99k83(1) k. Presumptions and
Burden of Proof. Most Cited Cases
When a copyright dispute is over whether a license exists, the alleged infringer has the burden of proving its existence. 17 U.S.C.A. § 501(b).

**[10] Copyrights and Intellectual Property 99**
**&#8984;48**

99 Copyrights and Intellectual Property
   991 Copyrights
      991(E) Transfer
         99k48 k. Licenses in General. Most Cited Cases
In a copyright case, the determination of whether a defendant's activities fall within the scope of an existing license essentially involves a question of contract interpretation.

**[11] Copyrights and Intellectual Property 99**
**&#8984;88**

99 Copyrights and Intellectual Property
   991 Copyrights
      991(J) Infringement
         991(J)2 Remedies
            99k72 Actions for Infringement
               99k88 k. Trial. Most Cited Cases

**Evidence 157 &#8984;448**

157 Evidence
   157XI Parol or Extrinsic Evidence Affecting Writings
      157XI(D) Construction or Application of Language of Written Instrument
         157k448 k. Grounds for Admission of Extrinsic Evidence. Most Cited Cases
In a copyright case, if the contract language is unambiguous and conveys a definite meaning, its interpretation is a question of law for the court; however, if the language used is susceptible to differing interpretations, each of which may be said to be as reasonable as another, then the interpretation of the contract becomes a question of fact for the jury, and extrinsic evidence of the parties' intent properly is admissible. 17 U.S.C.A. § 501(b).

**[12] Copyrights and Intellectual Property 99**
**&#8984;83(1)**

99 Copyrights and Intellectual Property
   991 Copyrights
      991(J) Infringement
         991(J)2 Remedies
            99k72 Actions for Infringement
               99k83 Evidence
                  99k83(1) k. Presumptions and
Burden of Proof. Most Cited Cases
The copyright owner bears the burden of proving that the defendant's copying was unauthorized in situations where the dispute is only over the scope of the license. 17 U.S.C.A. § 501(b).

**[13] Federal Civil Procedure 170A &#8984;1831**

170A Federal Civil Procedure
   170AXI Dismissal
      170AXI(B) Involuntary Dismissal
         170AXI(B)5 Proceedings
            170Ak1827 Determination
               170Ak1831 k. Fact Issues. Most Cited Cases
Interpretation of a contract is suitable for disposition on a motion to dismiss for failure to state a claim upon which relief can be granted since generally it is a question of law. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

**[14] Copyrights and Intellectual Property 99**
**&#8984;48**

99 Copyrights and Intellectual Property
   991 Copyrights
      991(E) Transfer

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2008 WL 1781232 (S.D.N.Y.), 86 U.S.P.Q.2d 1496
**(Cite as: --- F.Supp.2d ----, 2008 WL 1781232 (S.D.N.Y.))**

99k48 k. Licenses in General. Most Cited Cases

When considering whether the use of a new technology is covered by an existing copyright license, a copyright licensee properly may pursue any uses that reasonably may be said to fall within the medium as described in the license. 17 U.S.C.A. § 501(b).

**[15] Copyrights and Intellectual Property 99 ☞48**

99 Copyrights and Intellectual Property
　991 Copyrights
　　991(E) Transfer
　　　99k48 k. Licenses in General. Most Cited Cases

Neutral principles of contract interpretation are used to determine whether the use of a new technology is covered by an existing copyright license; if a license is more reasonably read to benefit one party, that party should be able to rely on it. 17 U.S.C.A. § 501(b).

**[16] Contracts 95 ☞175(1)**

95 Contracts
　95II Construction and Operation
　　95II(A) General Rules of Construction
　　　95k175 Evidence to Aid Construction
　　　　95k175(1) k. Presumptions. Most Cited Cases

A party seeking a departure from the most reasonable reading of the contract bears the burden of supporting its interpretation of the contract.

**[17] Copyrights and Intellectual Property 99 ☞77**

99 Copyrights and Intellectual Property
　991 Copyrights
　　991(J) Infringement
　　　991(J)2 Remedies
　　　　99k72 Actions for Infringement
　　　　　99k77 k. Persons Liable. Most Cited Cases

Under the Copyright Act, one who, with knowledge of the infringing activity, induces, causes, or materially contributes to the infringing conduct of another, may be held liable as a contributory infringer. 17 U.S.C.A. § 501(b).

**[18] Copyrights and Intellectual Property 99 ☞77**

99 Copyrights and Intellectual Property
　991 Copyrights
　　991(J) Infringement
　　　991(J)2 Remedies
　　　　99k72 Actions for Infringement
　　　　　99k77 k. Persons Liable. Most Cited Cases

Contributory copyright infringement includes personal conduct that encourages or assists the infringement. 17 U.S.C.A. § 501(b).

**[19] Copyrights and Intellectual Property 99 ☞77**

99 Copyrights and Intellectual Property
　991 Copyrights
　　991(J) Infringement
　　　991(J)2 Remedies
　　　　99k72 Actions for Infringement
　　　　　99k77 k. Persons Liable. Most Cited Cases

There can be no contributory copyright infringement absent actual infringement. 17 U.S.C.A. § 501(b).

**[20] Copyrights and Intellectual Property 99 ☞82**

99 Copyrights and Intellectual Property
　991 Copyrights
　　991(J) Infringement
　　　991(J)2 Remedies
　　　　99k72 Actions for Infringement
　　　　　99k82 k. Pleading. Most Cited Cases

Copyright owner stated federal claim under Copyright Act on allegations that licensees infringed his

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

copyright in songs by exceeding scope of their license and that he was entitled to recover damages for that infringement. 17 U.S.C.A. § 501(b).

**[21] Courts 106 ⟲493(1)**

106 Courts
    106VII Concurrent and Conflicting Jurisdiction
        106VII(B) State Courts and United States Courts
            106k493 Pendency and Scope of Prior Proceeding
                106k493(1) k. In General. Most Cited Cases
Copyright owner's pursuit of other grievances in state court against licensees that were related to same recording agreement did not bar owner's right to seek remedies in federal court for alleged violations of Copyright Act. 17 U.S.C.A. § 501(b); 28 U.S.C.A. § 1338(a).

**[22] Copyrights and Intellectual Property 99 ⟲107**

99 Copyrights and Intellectual Property
    99II Intellectual Property
        99k107 k. Contracts. Most Cited Cases
Phrases "all forms" "now or hereafter known," when referring to forms of reproduction authorized by licensing agreement, created expansive rather than restrictive conveyance of rights, and thus covered future technologies, including digital download form, although digital downloads were transmitted to end users rather than manufactured. 17 U.S.C.A. § 501(b).

**[23] Federal Civil Procedure 170A ⟲1832**

170A Federal Civil Procedure
    170AXI Dismissal
        170AXI(B) Involuntary Dismissal
            170AXI(B)5 Proceedings
                170Ak1827 Determination
                    170Ak1832 k. Matters Considered in General. Most Cited Cases
Recording agreement that was heavily referenced

by copyright owner in his complaint alleging copyright infringement was incorporated by reference and thus could be considered by court on motion to dismiss for failure to state claim upon which relief could be granted. 17 U.S.C.A. § 501(b); Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

Jeff Sanders, Esq., Roberts & Ritholz LLP, New York, NY, for Plaintiff.
Stewart L. Levy, Esq., James E. Doherty, Esq., Eisenberg Tanchum & Levy, New York, NY, of Counsel, Michael D. Friedman, Esq., Troutman Sanders LLP, New York, NY, Curtis B. Krasik, Esq., Kirkpatrick & Lockhart Preston Gates Ellis LLP, Pittsburgh, PA, for Defendants.

*OPINION AND ORDER*

SHIRA A. SCHEINDLIN, District Judge.

**I. INTRODUCTION**

*1 Richard Reinhardt (p/k/a Richie Ramone and Richie Beau) brings this action for copyright infringement against Wal-Mart Stores, Inc., Apple, Inc., RealNetworks, Inc., Taco Tunes, Inc., Ramones Productions, Inc., the Estate of John Cummings, Herzog & Strauss, and Ira Herzog (collectively, "Defendants") under the 1976 Copyright Act. He also brings a claim for contributory infringement against the Estate of John Cummings, Ira Herzog, Herzog & Strauss, and Ramones Productions. Defendants have moved to dismiss the Amended Complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction and pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. For the following reasons, the motion to dismiss for failure to state a claim is granted and the case is dismissed.

**II. BACKGROUND**

**A. Facts**[FN1]

Richard Reinhardt was a member of the punk band

the Ramones [FN2] from 1983 to 1987.[FN3] During that time he authored six songs-*Smash You, Somebody Put Something in My Drink, Human Kind, I'm Not Jesus, I Know Better Now,* and *(You) Can't Say Anything Nice* (the "Compositions").[FN4] He was the sole author of each Composition.[FN5] Reinhardt filed copyright registration applications for the Compositions with the U.S. Copyright Office sometime before the Complaint was filed.[FN6]

In 1984, Reinhardt entered into a recording agreement ("Recording Agreement") with Ramones Productions,[FN7] a corporation engaged in the business of "exploiting" the intellectual property, merchandise, and other products associated with the Ramones.[FN8] The Recording Agreement provided for Ramones Productions to "engage Plaintiff to record with the Ramones."[FN9] The Recording Agreement also granted Ramones Productions the limited right to "create physical sound recordings embodying the Compositions,"[FN10] with royalty payments to be made to Reinhardt for his performances on certain Ramones recordings.[FN11]

Taco Tunes is a corporation engaged in the business of "exploiting musical compositions owned by certain members of the Ramones."[FN12] The Recording Agreement "contemplates" a music publishing agreement between Reinhardt and Taco Tunes, but no terms were ever agreed to and no contract was completed.[FN13]

Wal-Mart Stores, Inc. ("Wal-Mart"), Apple, Inc. ("Apple"), and RealNetworks, Inc. ("RealNetworks"), are businesses which, inter alia, distribute sound recordings and other digital media over the Internet and in other electronic forms.[FN14] Taco Tunes authorized these defendants to electronically distribute and duplicate "non-physical digital copies" of the Compositions. [FN15]

Herzog & Strauss is a partnership that provides accounting, management, and financial advisory services.[FN16] Ira Herzog is a partner at Herzog & Strauss.[FN17] The Estate of John Cummings is the estate of the deceased Ramones lead man, who was known professionally as Johnny Ramone.[FN18] These defendants, along with Ramones Productions, have controlled in whole or in part, the policies and operations of Taco Tunes for over twenty years.[FN19]

**B. Procedural History**

**\*2** Reinhardt filed suit against Defendants on September 21, 2007, for copyright infringement and brought an additional claim against the Estate of John Cummings, Herzog, Herzog & Strauss, and Ramones Productions for contributory infringement of his copyrights. He seeks damages as well a declaratory judgement that he, and not Ramones Productions or Taco Tunes, is the sole owner of all the copyrights to the Compositions.

In a separate action, Reinhardt filed suit against John Cummings, Ira Herzog, Herzog & Strauss, Taco Tunes, Ramones Productions, and others in federal court in the Central District of California. That action was dismissed on jurisdictional grounds, re-filed in state court in New York, and is currently pending.[FN20] According to Reinhardt, the state action asserts contract and tort claims related to Defendants' "non-payment of royalties attributable to the lawful use of the Compositions under the Express License."[FN21]

**III. APPLICABLE LAW**

**A. Rule 12(b)(1)-Subject-Matter Jurisdiction**

[1][2] Federal courts have original and exclusive jurisdiction over cases arising under the Copyright Act.[FN22] However, a case does not automatically fall within the jurisdiction of the federal courts simply because it concerns a copyright.[FN23] If the dispute is about the ownership of a copyright, and turns on the interpretation of a contract, then no federal question is presented. Unless the complaint asserts a remedy expressly granted by the Copyright Act, such as damages for infringement, or re-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

quires interpretation of the Copyright Act, there is no federal jurisdiction.[FN24] In these types of cases, "the line between contract interpretation and statutory interpretation is not always clear."[FN25]

**B. Rule 12(b)(6)-Motion to Dismiss**

When deciding a defendant's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must "accept as true all of the factual allegations contained in the complaint"[FN26] and "draw all inferences in the light most favorable to the non-moving party....."[FN27] Nevertheless, the court need not accord "[l]egal conclusions, deductions or opinions couched as factual allegations ... a presumption of truthfulness."[FN28]

[3][4] In deciding a motion to dismiss, the court is not limited to the face of the complaint, but "may [also] consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, ... and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit."[FN29] However, "before materials outside the record may become the basis for a dismissal ... it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document."[FN30]

[5]"Federal Rule of Civil Procedure 8(a)(2) requires ... 'a short and plain statement of the claim showing that the pleader is entitled to relief.' " FN31 To survive a 12(b)(6) motion to dismiss, the allegations in the complaint must meet the standard of "plausibility."[FN32] Although the complaint need not provide "detailed factual allegations,"[FN33] it must "amplify a claim with some factual allegations ... to render the claim *plausible.*"[FN34] The standard is no longer that a complaint can be dismissed only if there is "no set of facts" that plaintiff could prove "which would entitle him to relief."[FN35] Rather, the complaint must provide "the grounds upon which [the plaintiff's] claim rests through factual allegations sufficient 'to raise a right to relief above

the speculative level.' "[FN36]

**C. Copyright Infringement**

*3 [6]Section 102 of title 17 of the United States Code provides copyright protection to "original works of authorship fixed in any tangible medium of expression," including musical works and accompanying words.[FN37] Moreover, under the Copyright Act, copyright in a protected work "vests initially in the author or authors of the work."[FN38] The Second Circuit has held that "copyright ownership is a 'bundle of discrete rights' regarding the owner's ability to use his property."FN39Additionally, a copyright owner may bring an infringement action against those who exploit her work without permission or assignment.FN40A copyright owner may convey the rights, either temporarily or permanently, to another, although the copyright owner may not convey more than the copyright i protects.[FN41]

[7][8][9][10][11][12][13] To succeed on a claim for infringement under the Copyright Act, "a plaintiff must show that (a) he owned a valid copyright to the songs and (b) i defendants copied original constituent elements of these songs."[FN42] "[W]here an author brings an infringement action against a purported licensee, the license may be raised as a defense."[FN43] When the dispute is over whether a license exists, the alleged infringer has the burden of proving its existence.[FN44] However, determining whether a defendant's activities fall within the scope of an existing license essentially involves a question of contract interpretation.[FN45] If the contract language is unambiguous and conveys a definite meaning, its interpretation is a question of law for the court. However, if " 'the language used is susceptible to differing interpretations, each of which may be said to be as reasonable as another,' then the interpretation of the contract becomes a question of fact for the jury and extrinsic evidence of the parties' intent properly is admissible."[FN46] In situations where the dispute is only over the scope of the license, " 'the copyright owner bears the bur-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

den of proving that the defendant's copying was un-authorized.' " [FN47] Because "interpretation of a contract is generally a question of law," [FN48] it is " 'suitable for disposition on a motion to dismiss.' " [FN49]

[14][15][16] The Second Circuit continues to rely, in part, on *Bartsch v. MetroGoldwyn-Mayer, Inc.*,[FN50] for determining whether the use of a new technology is covered by an existing license.[FN51] The preferred approach, used in *Bartsch and* reaffirmed in *Boosey & Hawkes Music Publishers, Ltd., v. Walt Disney Co.*, is " 'that the licensee may properly pursue any uses that may reasonably be said to fall within the medium as de-scribed in the license.' " [FN52] This "new-use" ana-lysis relies on neutral principles of contract inter-pretation-if a license is more reasonably read to be-nefit one party, that party should be able to rely on it.[FN53] A party seeking a departure from the most reasonable reading of the contract bears the burden of supporting its interpretation of the contract.[FN54]

### D. Contributory Infringement

*4 [17][18][19]" '[O]ne who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another, may be held liable as a 'contributory' infringer.' " FN55 Contributory infringement includes personal conduct that encourages or assists the infringement.FN56There can be no contributory in-fringement absent actual infringement.[FN57]

### IV. DISCUSSION

### A. Subject-Matter Jurisdiction

[20] Defendants argue that the Complaint should be dismissed for lack of subject-matter jurisdiction in light of Reinhardt's pending state court action.[FN58] Defendants contend that Reinhardt's true grievance involves monies allegedly not paid to him under the Recording Agreement, not copyright infringement.FN59Additionally, Defendants claim

that Reinhardt cannot bring two suits against identical defendants-one for improperly collecting royalties attributed to lawful use and the other for unlawful copyright infringement of the same works.

[21] Reinhardt has properly alleged a federal claim. Reinhardt has alleged that Defendants have in-fringed his copyright by exceeding the scope of their license. Accordingly, he seeks damages for copyright infringement under the Copyright Act. That Reinhardt has other grievances with Defend-ants related to the same Recording Agreement does not bar his right to seek remedies in federal court for alleged violations of the Copyright Act. Be-cause Reinhardt has property alleged a cause of ac-tion arising under the Copyright Act, Defendants' motion to dismiss for lack of subject-matter juris-diction is denied.

### B. Copyright Infringement

[22][23] Reinhardt alleges that Defendants have in-fringed his copyright through their "exploitation of the Compositions" in digital formats, without his permission.[FN60]In their motion to dismiss, De-fendants rely on the plain language of the Record-ing Agreement to argue that their use of the Com-positions, in a digital format, is licensed by Rein-hardt. Because the Recording Agreement is heavily referenced by Reinhardt in the Complaint, it is in-corporated by reference and I will consider it on this motion to dismiss. [FN61]

In pertinent part, section 5(a) of the Recording Agreement authorizes Ramones Productions "to manufacture, advertise, sell, distribute, lease, li-cense or otherwise use or dispose of the Masters and phonograph records embodying the Masters, in any or all fields of use, by any method now or here-after known."[FN62]

The Recording Agreement also provides that " 'Records,' 'phonograph records,' 'recordings,' and 'derivatives' means all *forms of reproduction* in-cluding pre-recorded tapes and discs and electronic

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----, 2008 WL 1781232 (S.D.N.Y.), 86 U.S.P.Q.2d 1496

**(Cite as: --- F.Supp.2d ---, 2008 WL 1781232 (S.D.N.Y.))**

video recordings, *now or hereafter known,* manufactured or sold primarily for home use, school use, juke box use or use on means of transportation...."FN63 "Master" however, is specifically defined as "the equivalent of a 7 inch, 45 rpm, single-sided recording embodying the recorded performances by the Ramones."FN64

*5 This language is clear and unambiguous and conveys a definite meaning. The contractual language defining "phonograph records," when read together with the provisions of section 5(a), clearly authorizes the digital uses employed by Defendants. The phrase "now or hereafter known," when referring to forms of reproduction, reveals that future technologies are covered by the agreement.FN65 This language creates an expansive rather than a restrictive conveyance of rights. It is not reasonable to construe the phrase "all forms" "now or hereafter known" to exclude Defendants' alleged digital download form, which now constitutes a form of reproduction. This unambiguous language forecloses other interpretations and the need to consider extrinsic evidence.FN66

Additionally, this result is consistent with the "new-use" analysis of *Boosey & Hawkes.*The Recording Agreement is more reasonably read to convey to Ramones Productions the right to sell and distribute the "phonograph records" through new technologies, including digital formats. The language authorizes use in "all forms," "now or hereafter known."FN67The most reasonable reading of this language supports Defendants' use in digital form.

Reinhardt argues that the license refers only to "all forms" that are "manufactured or sold," and digital downloads do not fall within its purview because they are transmitted and licensed to end users rather than manufactured or sold.FN68This argument is without merit. The distinction Reinhardt attempts to draw departs from the most reasonable reading of the contract and he therefore bears the burden of justifying this departure. Reinhardt has failed to meet this burden, particularly because he alleges

that the digital recordings were sold, contradicting his own argument that digital recordings are licensed but not sold.FN69Accordingly, the claim for copyright infringement is dismissed as a matter of law.

**C. Contributory Infringement**

Reinhardt also alleges that the Estate of John Cummings, Herzog & Strauss, Herzog, and Ramones Productions knowingly and willfully directed the policies, activities, and operations of Taco Tunes, which is one of the parties that allegedly infringed on Reinhardt's copyright.FN70Because I hold that there is no copyright infringement, there cannot be any contributory infringement. Therefore, that claim is dismissed. Additionally, because there is no copyright infringement or contributory infringement, I need not address whether the claims are barred by the statute of limitations or the doctrines of laches, estoppel or implied consent.

**V. CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss is granted. The Clerk of the Court is directed to close this motion [No. 5 on the docket] and this case.

SO ORDERED:

> FN1. The following factual allegations, taken from the Complaint, are accepted as true for purposes of this motion.

> FN2. Formed in 1974, the Ramones' first four albums were "punk cornerstones," fundamental to the development of American and British punk music. John Pareles, *Dee Dee Ramone, Pioneer Punk Rocker, Dies at 50,* N.Y. Times, June 7, 2002. The music of the Ramones is "explicitly juvenile, at once sweetly dumb and knowing, and, above all, blisteringly loud."Jonathan Lethem, *Wanting to Be Joey Ramone,* N.Y.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Times, Apr. 20, 2001. Their music was not immediately popular, and the band did not achieve commercial success in its lifetime. They never had a "top 40" hit, and no Ramones album went platinum. With hindsight, critics and fans alike have recognized their contributions to the development of American rock and punk music. The Ramones were inducted into the Rock and Roll Hall of Fame in 2002.

FN3.*See* Amended Complaint ("Compl.") ¶ 1.

FN4.*See id.* ¶ 13.

FN5.*See id.* ¶ 14.

FN6.*See id.* ¶ 15.

FN7.*See id.* ¶ 16.

FN8.*Id.* ¶ 9.

FN9.*Id.* ¶ 16.

FN10.*Id.* ¶ 19.

FN11.*See id.* ¶ 16.

FN12.*Id.* ¶ 8.

FN13.*Id.* ¶ 17.

FN14.*See id.* ¶¶ 5-7.

FN15.*Id.* ¶ 21.

FN16.*See id.* ¶ 11.

FN17.*See id.* ¶ 12.

FN18.*See id.* ¶ 10.

FN19.*See id.* ¶ 23.

FN20.*See* Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Pl.Mem.") at 21 n. 10.

FN21.*Id.* at 21.

FN22.*See* 28 U.S.C. § 1338(a).

FN23.*See Jasper v. Boniva Music, Inc.,* 314 F.3d 42, 46 (2d Cir.2002).

FN24.*See id.*

FN25.*Id.*

FN26.*Bell Atl. Corp. v. Twombly,* --- U.S. - ---, 127 S.Ct. 1955, 1975, 167 L.Ed.2d 929 (2007) (quotation marks omitted).*Accord In re NYSE Specialists Sec. Litig.,* 503 F.3d 89, 95 (2d Cir.2007).

FN27.*In re NYSE Specialists,* 503 F.3d at 95.

FN28.*Id.* (quotation marks omitted).

FN29.*ATSI Commc'ns v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir.2007).

FN30.*Faulkner v. Beer,* 463 F.3d 130, 134 (2d Cir.2006).

FN31.*Erickson v. Pardus,* --- U.S. ----, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (quoting Fed.R.Civ.P. 8(a)(2)).

FN32.*See Bell Atl.,* 127 S.Ct. at 1970.

FN33.*Id.* at 1964.*Accord ATSI,* 493 F.3d at 98 n. 2 (applying the standard of plausibility outside *Bell Atlantic'* s anti-trust context).

FN34.*Iqbal v. Hasty,* 490 F.3d 143, 157-58 (2d Cir.2007) (emphasis in original).

FN35.*Bell Atl.,* 127 S.Ct. at 1969 (quoting *Conley v. Gibson,* 355 U.S. 45, 46 (1957)).*Accord id.*("The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard.").

FN36.*ATSI,* 493 F.3d at 98 (quoting *Bell*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*Atl.*, 127 S.Ct. at 1965).

FN37.17 U.S.C. § 102(a).

FN38.17 U.S.C. § 201.

FN39.*Davis v. Blige*, 505 F.3d 90, 98 (2d Cir.2007) (quoting *Faulkner v. Nat'l Geographic Enters.*, 409 F.3d 26, 35 (2d Cir.2005)).

FN40.*See id.* at 98-99 (citing 17 U.S.C. § 501(b)).

FN41.*See id.* at 99.

FN42.*Phillips v. Audio Active Ltd.*, 494 F.3d 378, 390 (2d Cir.2007).

FN43.*Tasini v. New York Times Co.*, 206 F.3d 161, 170-71 (2d Cir.2000).

FN44.*See id.* at 171.

FN45.*See Bourne v. Walt Disney Co.*, 68 F.3d 621, 631 (2d Cir.1995).

FN46.*Id.* at 629 (quoting *Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir.1992)).

FN47.*Tasini*, 206 F.3d at 171 (quoting *Bourne*, 68 F.3d at 631).

FN48.*Revson v. Cinque & Cinque*, 221 F.3d 59, 66 (2d Cir.2000).

FN49.*OBG Technical Servs. v. Northrop Grumman Space & Mission Sys. Corp.*, 503 F.Supp.2d 490, 514 (D.Conn.2007) (quoting *Kohl's Dep't Stores v. Rongrant Assocs.*, No. 04 Civ. 4907, 2005 WL 1263613, at *1 (E.D.N.Y. May 27, 2005)).

FN50.391 F.2d 150 (2d Cir.1968).

FN51.*See Boosey & Hawkes Music Publishers, Ltd., v. Walt Disney Co.*, 145 F.3d 481, 487-88 (2d Cir.1998)."Disputes about

whether licensees may exploit licensed works through new marketing channels made possible by technologies developed after the licensing contract-often called 'new-use' problems-have vexed courts since at least the advent of the motion picture."*Id.* at 486.

FN52.*Id.* at 486-87 (quoting MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT § 10.10(b)).

FN53.*See id* at 487.

FN54.*See id.* at 488.

FN55.*Nat'l Geographic Enterp.*, 409 F.3d at 40 (quoting *Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir.1971)).

FN56.*Matthew Bender & Co. v. West Publ'g Co.*, 158 F.3d 693, 706 (2d Cir.1998).

FN57.*See Nat'l Geographic Enterp.*, 409 F.3d at 40.

FN58.*See* Defendants' Memorandum of Law in Support of Defendants' Motion to Dismiss at 18.

FN59.*See id.*

FN60. Compl. ¶ 28.

FN61.*See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153-53 n. 4 (2d Cir.2002) (holding that contracts between plaintiff and a recording company were properly considered by the district court because the amended complaint was "replete with references to the contracts and requests judicial interpretation of their terms").

FN62. 8/1/84 Recording Agreement ("Recording Agreement"), Ex. F. to Affidavit of Stewart L. Levy, defendants' coun-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

sel, at 61.

FN63.*Id.* at 58 (emphasis added).

FN64.*Id.* at 57.

FN65. When the parties intended to limit the definition of a certain term to a specific physical medium they did so, defining "Master" as a "7 inch, 45 rpm, single-sided recording," and "LP" as "12 inch, 33-1/3 rmp, long playing doublesided phonograph record."*Id* . "Phonograph records" has no such limiting language. Instead, it refers broadly to "all forms of reproductions." *Id.* at 58.

FN66.*See Boosey & Hawkes Music Publishers. Ltd.,* 145 F.3d at 486 (holding that a 1939 agreement conveying the right "to record [the composition] in any manner, medium or form" for use "in [a] motion picture" was sufficiently broad to include distribution in video format).*Accord Batiste v. Island Records, Inc.,* 179 F.3d 217, 223 (5th Cir.1999) (holding that the right to use musical compositions "in any or all fields of use, by any method now or hereafter known, throughout the world" was sufficiently broad to include a digital sample).

FN67. Recording Agreement at 58.

FN68.*See* Pl. Mem. at 11-12.

FN69. As Defendants note, Reinhardt alleges in the Complaint that Apple, Wal-Mart, and RealNetworks "continuously sold and offered to sell digital recordings" of the Compositions. Compl. ¶¶ 24-26. *See* Defendants' Reply Memorandum of Law in Further Support of Defendants' Motion to Dismiss at 4.

FN70.*See* Compl. ¶¶ 32-33.

S.D.N.Y.,2008.

Reinhardt v. Wal-Mart Stores, Inc.
--- F.Supp.2d ----, 2008 WL 1781232 (S.D.N.Y.), 86 U.S.P.Q.2d 1496

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**Exhibit A**
**Part 2**

Not Reported in F.Supp.2d                                                                                                      Page 1
Not Reported in F.Supp.2d, 2006 WL 2794934 (N.D.Ill.), 2006-2 Trade Cases P 75,455, 83 U.S.P.Q.2d 1752
**(Cite as: Not Reported in F.Supp.2d, 2006 WL 2794934 (N.D.Ill.))**

C

Amerimax Real Estate Partners, Inc. v. RE/MAX
Intern., Inc.
N.D.Ill.,2006.

United States District Court,N.D. Illinois, Eastern
Division.
AMERIMAX REAL ESTATE PARTNERS, INC.,
Plaintiff and Counterdefendant,
v.
RE/MAX INTERNATIONAL, INC., Defendant
and Counterclaimant,
ROARING FORK CAPITAL PARTNERS, INC.,
Defendant,
v.
Hildebrando TORRES, Counterdefendant.
No. 05 C 5300.

Sept. 26, 2006.

Lawrence S. Wick, Wick Law Office, Lake Bluff,
IL, Carmen B. Patti, Carmen B. Patti & Associates,
Chicago, IL, for Plaintiff and Counterdefendant.
Gayle L. Strong, George G. Matava, John R.
Posthumus, Shelley B. Mixon, Greenberg Traurig,
LLP, Denver, CO, Jeffrey Patrick Dunning, Mark
R. Galis, Greenberg Traurig, LLP, Chicago, IL, for
Defendant and Counterclaimant.
Marc P. Seidler, Gillian Dworsky Madsen, DLA
Piper US LLP, Chicago, IL, for Defendant.

OPINION AND ORDER

NORGLE, J.
*1 Before the court are Defendant and Counter-
claimant RE/MAX International, Inc.'s and Defend-
ant Roaring Fork Capital Partners, Inc.'s Motions to
Dismiss brought pursuant to Federal Rules of Civil
Procedure 12(b)(1) and (6), and Plaintiff and Coun-
terdefendant Amerimax Real Estate Partners, Inc.'s
request for Declaratory Judgment. For the follow-
ing reasons, Defendants' Motions to Dismiss are
granted in part and denied in part, Plaintiff's request
for Declaratory Judgment is granted, and the court

relinquishes jurisdiction on Plaintiff and Counter-
claimant's remaining state law claim.

I. BACKGROUND

A. Facts

Plaintiff and Counterdefendant Amerimax Real Es-
tate Partners, Inc. ("Amerimax") is an Illinois cor-
poration engaged in the real estate brokerage busi-
ness. The Illinois Secretary of State has issued
Illinois Registration Nos. 94,571 and 94,995 for the
marks "Amerimax Real Estate Partners" and
"Amerimax" to Plaintiff. Counterdefendant
Hildebrando Torres is the registered agent and pres-
ident of Amerimax. Amerimax alleges that it uses
the name and mark "Amerimax Real Estate Part-
ners," as well as "Amerimax" in the Chicago met-
ropolitan area and elsewhere to advertise and pro-
mote its real estate brokerage services.

Defendant Re/Max International, Inc. ("Re/Max")
is a Colorado corporation in the business of, *inter
alia,* franchising real estate brokerage offices. De-
fendant Roaring Fork Capital Partners ("Roaring
Fork") is a Colorado corporation doing business in
Illinois as "Re/Max Northern Illinois." Roaring
Fork is a regional sub-franchisor of Re/Max in the
Northern Illinois area, and is in the business of sub-
franchising or licensing real estate brokerage of-
fices, and providing real estate brokerage services,
in Northern Illinois. Re/Max is the owner of United
States Trademark registration certificates for the
service marks "Re/Max" and "ReMax," along with
various designs containing these marks. Re/Max
also owns Illinois trademark registrations for the
mark "Re/Max," and various designs containing
this mark. Re/Max alleges that a network of over
100,000 franchisees and affiliated independent con-
tractors and sales associates are authorized by Re/
Max to use its marks and designs in providing real
estate brokerage services throughout the United
States and other countries.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 2794934 (N.D.Ill.), 2006-2 Trade Cases P 75,455, 83 U.S.P.Q.2d 1752
(Cite as: Not Reported in F.Supp.2d, 2006 WL 2794934 (N.D.Ill.))

Page 2

Amerimax alleges that in March 1996, Re/Max filed two United States applications in an attempt to register "/Max" as a mark for real estate franchise and brokerage services. Amerimax further alleges that the United States Patent and Trademark Office refused to register these marks, and that Re/Max subsequently abandoned "/Max." Re/Max admits that it filed United States trademark applications for "/Max," and later abandoned those applications.

During June 2005, Amerimax alleges, Re/Max contacted Amerimax and asserted that Re/Max owned exclusive rights in "Max," and that Amerimax's use of its mark infringed Re/Max's rights. Re/Max demanded that Amerimax surrender its mark, and, *inter alia,* threatened litigation against Amerimax if Amerimax did not surrender its mark. After an exchange of correspondence between the parties' respective attorneys proved fruitless, the instant litigation ensued.

B. Procedural History

*2 Amerimax filed its Amended Complaint on March 3, 2006. The Amended Complaint added Roaring Fork as a Defendant, with leave of the court. Count I of the Amended Complaint requests a Declaratory Judgment, pursuant to 28 U.S.C. § 2201, in which the court would declare that the word "Max" is a generic or common descriptive word, that Defendants have no exclusive rights to the word "Max," and that Amerimax is not infringing on any valid rights of Re/Max by using "Max" in its mark. Count I also requests an injunction prohibiting Defendants from, *inter alia,* pursuing litigation or other action which would attempt to preclude Amerimax's use of "Max." Count II of the Amended Complaint seeks, *inter alia,* cancellation of Defendants' United States marks, and alleges violations of federal antitrust laws. Count III of the Amended Complaint alleges violations of Illinois antitrust laws.

On March 31, 2006, Re/Max answered the Amended Complaint, and filed a counterclaim.

Count I of the counterclaim alleges trademark infringement under federal law. Count II alleges unfair competition under federal law. Counts III-V allege trademark infringement and unfair competition under Illinois law. The counterclaim seeks, *inter alia,* to enjoin Amerimax from using its mark.

On that same date, Re/Max filed a Motion to Dismiss Counts II and III (the antitrust counts). Re/Max asserts that the *Noerr-Pennington* doctrine immunizes it from antitrust liability. On April 5, 2006, Roaring Fork filed its own Motion to Dismiss the entire complaint. Roaring Fork asserts that it has not engaged in any purportedly unlawful activity as to Amerimax, and joins in Re/Max's assertion that *Noerr-Pennington* immunizes it from liability. These Motions to Dismiss are fully briefed and before the court.

## II. DISCUSSION

A. Standard of Decision

*1. The Declaratory Judgment Act*

28 U.S.C. § 2201(a) provides in part,

In a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

The Declaratory Judgment Act is intended to allow a party "who is reasonably at legal risk because of an unresolved dispute, to obtain judicial resolution of that dispute without having to await the commencement of legal action by the other side."*BP Chemicals Ltd. v. Union Carbide Corp.,* 4 F.3d 975, 977 (Fed.Cir.1993). A court should not consider a motion or suit for declaratory judgment unless an

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2006 WL 2794934 (N.D.Ill.), 2006-2 Trade Cases P 75,455, 83 U.S.P.Q.2d 1752
**(Cite as: Not Reported in F.Supp.2d, 2006 WL 2794934 (N.D.Ill.))**

actual controversy exists between the parties. *Supreme Video, Inc. v. Schauz,* 15 F.3d 1435, 1443 n. 10 (7th Cir.1994) ("The test for whether to grant a declaratory judgment is 'whether the facts alleged, under all the circumstances, show that there is a controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant issuance of a declaratory judgment.' ") (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941)). Where a declaratory judgment suit involves trademarks,

**\*3** the Seventh Circuit has applied a two-pronged test for determining whether an actual case or controversy exists: (1) whether the defendant's conduct has created a real and reasonable apprehension of liability on the part of the plaintiff; and (2) whether the plaintiff has engaged in a course of conduct which has brought it into adversarial conflict with the defendant.

*Planet Hollywood (Region IV), Inc. v. Hollywood Casino Corp.,* 80 F.Supp.2d 815, 873 (N.D.Ill.1999) (citing *G. Heileman Brewing Co., Inc. v. Anheuser-Busch, Inc.,* 873 F.2d 985, 990 (7th Cir.1989)).

### 2. Motions to Dismiss

In deciding a Rule 12(b)(6) motion, all well-pleaded facts are accepted as true, and all reasonable inferences are drawn in favor of the plaintiff. *See,e.g.,Jackson v. E.J. Brach Corp.,* 176 F.3d 971, 977-78 (7th Cir.1999)."The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims ...Rule 12(b)(6) should be employed only when the complaint does not present a legal claim."*Smith v. Cash Store Mgmt., Inc.,* 195 F.3d 325, 327 (7th Cir.1999); *seeLeatherman v. Tarrant County,* 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) (the Federal Rules of Civil Procedure allow for a liberal system of notice pleading); *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (a com-

plaint must only include "fair notice of what the plaintiff's claim is and the grounds upon which it rests").

[P]leadings in federal court need not allege facts corresponding to each element of a statute. It is enough to state a claim for relief-and Fed.R.Civ.P. 8 departs from the old code-pleading practice by enabling plaintiffs to dispense with the need to identify, and plead specifically to, each ingredient of a sound legal theory ... Plaintiffs need not plead facts; they need not plead law; they plead claims for relief. Usually they need do no more than narrate a grievance simply and directly, so that the defendant knows what he has been accused of.

*Doe v. Smith,* 429 F.3d 706, 708 (7th Cir.2005).

When reviewing a motion to dismiss under Rule 12(b)(6), a court therefore merely looks to the sufficiency of the complaint. *Autry v. Northwestern Premium Servs., Inc.,* 144 F.3d 1037, 1039 (7th Cir.1998). In examining a motion to dismiss, a court should "accept all well-plead allegations in the complaint as true,"*Flannery v. Recording Indus. Ass'n of Am.,* 354 F.3d 632, 637 (7th Cir.2004), and view "plaintiff's factual allegations and any inferences reasonably drawn therefrom in a light most favorable to the plaintiff."*Yasak v. Ret. Bd. of the Policemen's Annuity Fund,* 357 F.3d 677, 678 (7th Cir.2004). Dismissal under Rule 12(b)(6) is proper when "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."*Weizeorick v. Abnamro Mortgage Group, Inc.,* 337 F.3d 827, 830 (7th Cir.2003). Put another way, "[d]ismissal under Rule 12(b)(6) is only appropriate when there is no possible interpretation of the complaint under which it can state a claim."*Flannery,* 354 F.3d at 637.

**\*4** A court may dismiss a case pursuant to Rule 12(b)(1) where it lacks subject matter jurisdiction. *SeeUnited Phosphorous Ltd. v. Angus Chem., Co.,* 322 F.3d 942, 946 (7th Cir.2003) (indicating that subject matter jurisdiction is "an issue that should be resolved early but must be considered at any

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 2794934 (N.D.Ill.), 2006-2 Trade Cases P 75,455, 83 U.S.P.Q.2d 1752
(Cite as: Not Reported in F.Supp.2d, 2006 WL 2794934 (N.D.Ill.))

stage of the litigation.").

## B. Declaratory Judgment

In Count I of its Amended Complaint, Amerimax requests a Declaratory Judgment that (1) the word "Max" is a generic or common word, (2) Defendants do not have exclusive rights to the word "Max," and (3) Amerimax is not infringing on Defendants' rights by using the word "Max" in its name and mark. Amerimax also requests injunctive relief prohibiting Defendants from, *inter alia,* pursuing litigation which would preclude Amerimax from using the word "Max."

The court must first confront the threshold issue of whether this matter presents an actual case or controversy. *SeePlanet Hollywood,* 80 F.Supp.2d at 873. In this case, the court determines that it is presented with an actual case or controversy. Re/Max acknowledges that it has taken action to enforce its trademark, including contacting Amerimax in order to assert its exclusive rights in the Re/Max mark, and filing a trademark infringement counterclaim against Amerimax. Whether Roaring Fork, Re/Max's licensed subfranchisor, actually participated in these activities is irrelevant in determining whether an actual case or controversy exists between the parties. It is abundantly clear that Re/Max's activities have created a "real and reasonable apprehension of liability on the part of [Amerimax]," indeed, as the court has indicated, Re/Max has filed a counterclaim in which it asserts that Amerimax has infringed the Re/Max mark. *Seeid.*There is therefore no question as to whether Amerimax is now in "adversarial conflict with [Re/Max]." *Seeid.*

The court notes that in Count I of the Amended Complaint, it is not being asked to determine whether either party has a valid trademark, or into which category the parties' trademarks might fall. *SeePackman v. Chicago Tribune Co.,* 267 F.3d 628, 638 (7th Cir.2001) ("The law recognizes five categories of trademarks, in ascending order of dis-

tinctiveness: generic, descriptive, suggestive, arbitrary, and fanciful."); *seealsoHenri's Food Products Co., Inc. v. Tasty Snacks, Inc.,* 817 F.2d 1303, 1305 (7th Cir.1987). Here, the court is merely being asked to determine whether "Max," as used as a suffix to the parties' trademarks, is in and of itself protectable as a trademark. For the following reasons, the court determines that "Max" is not protectable as a trademark. Many companies use "Max" as a prefix or suffix to their names, trademarks, products, or services. A cursory search of the internet revealed the following examples of businesses, products, and services containing this prefix or suffix: Business-max, Office Max, Car Max, Travel Max, TJ Maxx, StorageMax, Max Real Estate Network, Mad Max Enterprises, Mad Max Movies, Super Max Products, Super Max Razors, max.com, Rotax Maxchallenge, Mill-Max Manufacturing Corp., Rotomax Center-Pivot Phase Converter, VacUMax, E-Max Instruments, Inc., Truck Max, Zero-Max Motion Control Products, Scrubs-Max.com, ErgoMax Heat Exchangers, and, of course, Amerimax and Re/Max. Moreover, "Max" is a frequently used abbreviation for the commonly used word "maximum." The word "Max" is therefore ubiquitous in both commerce and ordinary language. Additionally, Re/Max admits that in 1996, it filed two United States applications in an attempt to register "/Max" as a mark for its real estate franchise and brokerage services. These applications were refused by the United States Patent and Trademark office, and Re/Max later abandoned the applications.

**\*5** The court thus finds that Amerimax's use of "Max" or "max" in its name and mark does not infringe on Re/Max's mark, as Amerimax's use of its mark is "not likely to cause confusion among consumers."*SeePackman,* 267 F.3d at 638 (to establish trademark infringement, a plaintiff must show that its mark is protectable, and that defendant's use of its mark is likely to confuse consumers). The court also finds that Amerimax's use of its mark does not dilute Re/Max's mark. *SeeEli Lilly & Co. v. Natural Answers, Inc.,* 233 F.3d 456, 466 (7th Cir.2000) (to

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2006 WL 2794934 (N.D.Ill.), 2006-2 Trade Cases P 75,455, 83 U.S.P.Q.2d 1752
(Cite as: Not Reported in F.Supp.2d, 2006 WL 2794934 (N.D.Ill.))

establish trademark dilution, a plaintiff must show either that consumers may mistakenly associate its "famous mark with defendant's inferior or offensive product," or that plaintiff's mark appears "on a plethora of different goods or services.").

The court therefore grants Amerimax the following Declaratory Judgment. "Max" or "max" is a generic or common descriptive word commonly used as a prefix or suffix for business names, trademarks, products, and services. Defendants do not have any exclusive rights to "Max" or "max." Amerimax is not infringing or diluting any valid rights of Defendants by using "Max" or "max" in its name and trademark "Amerimax."

However, the court declines to grant Amerimax injunctive relief. The court is not convinced that injunctive relief is required in this case. The court is satisfied that the Declaratory Judgment it has issued, along with its decision on the remaining portions of Defendants' Motions to Dismiss, will speed along the ultimate resolution of this case, and that there is little danger that Defendants' challenged conduct will continue should Amerimax ultimately prevail on its state court claim, or in the counterclaim against it that remains before this court. *See* *Milwaukee Police Ass'n v. Jones,* 192 F.3d 742, 748 (7th Cir.1999) (" 'The necessary determination [for granting injunctive relief] is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." ') (quoting *United States v. W.T. Grant Co.,* 345 U.S. 629, 633, 73 S.Ct. 894, 97 L.Ed. 1303 (1953)).

Defendants' Motions to Dismiss are therefore denied as to Count I of the Amended Complaint. Amerimax is granted a Declaratory Judgment as specified above.

C. The Federal Anti-Trust Count and the *Noerr-Pennington* Doctrine

In Count II of its Amended Complaint, Amerimax

alleges that Defendants are attempting to monopolize the real estate market in the Chicago area by (1) attempting to register "Max" as a trademark, (2) seeking to enforce purportedly exclusive rights in "Max," (3) threatening litigation against Amerimax and other competitors, and (4) making "monopolistic utilization" of its mark in "those and other ways." Am. Compl., ¶ 40. Amerimax asks the court to, *inter alia,* order the United States Commissioner of Patents and Trademarks to cancel any existing United States marks including "ReMax" or "Re/Max," and to award Amerimax statutory damages in excess of $1.5 million.

*6 It is well-established that entities holding trademarks may lawfully seek to protect those trademarks. "The Supreme Court has held that bona-fide attempts to influence the actions of a legislative body are immune from antitrust scrutiny regardless of any anticompetitive motives behind these attempts." *Winterland Concessions Co. v. Trela,* 735 F.2d 257, 263 (7th Cir.1984) (citing *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961) and *United Mine Workers v. Pennington,* 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1961)). In 1972, "[t]he Court extended *Noerr-Pennington* immunity to good-faith attempts to secure legitimate goals through the use of the courts in *California Motor Transport v. Trucking Unlimited,* 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642."*Id.* The *Noerr-Pennington* doctrine, which is based on the First Amendment, therefore "immunizes from antitrust liability bona fide lobbying and litigation efforts," whether or not these efforts are motivated by anticompetitive goals. *W.H. Brady Co. v. Lem Products, Inc.,* 659 F.Supp. 1355, 1371 (N.D.Ill.1987).*Noerr-Pennington* immunity, however, does not extend to "sham" litigation. *Winterland,* 735 F.2d at 263;*W.H. Brady,* 659 F.Supp. at 1371. "Sham" litigation occurs when the purpose of litigation "is not to win a favorable judgment against a competitor, but to harass him, and deter others, by the process itself-regardless of the outcome-of litigating."*Grip-Pak, Inc. v. Illinois Tool*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2006 WL 2794934 (N.D.Ill.), 2006-2 Trade Cases P 75,455, 83 U.S.P.Q.2d 1752
(Cite as: Not Reported in F.Supp.2d, 2006 WL 2794934 (N.D.Ill.))

*Works, Inc.,* 694 F.2d 466, 472 (7th Cir.1982).

In this case, the court determines that Defendants's prelitigation activities are legitimate, bona fide efforts to protect the "Re/Max" mark, and that these activities are therefore immune from antitrust liability under the *Noerr-Pennington* doctrine.[FN1] It is undisputed that Re/Max holds a United States trademark in its name. It is also undisputed that Re/Max contacted Amerimax in an attempt to enforce its mark, and, when these efforts failed, threatened litigation against Amerimax. When Amerimax struck first and filed the instant action, Re/Max countersued. There is no indication in the record that this countersuit is a "sham." *SeeGrip-Pak, Inc.,* 694 F.2d at 472. All of these actions were clearly undertaken by Defendants in an effort to protect the Re/Max mark, and, notwithstanding the fact that Amerimax has prevailed on Count I of the Amended Complaint, these actions are protected by *Noerr-Pennington.SeeWinterland,* 735 F.2d at 263;*Spangler Candy Co. v. Crystal Pure Candy Co.,* 235 F.Supp. 18, 32 (N.D.Ill.1964) ("a trademark holder has the right to defend himself against infringement" by engaging in prelitigation activity such as sending trademark policing letters to alleged infringers). Because Defendants' actions are immune from liability under *Noerr-Pennington,* the court grants Defendants' Motions to Dismiss as to Count II of the Amended Complaint.

> FN1. The court rejects without comment the allegation that Re/Max's attempt to register a trademark could be somehow construed as a violation of federal antitrust law.

D. The State Law Antitrust Count

*7 The court has dispositively determined that Amerimax is entitled to a Declaratory Judgment (Count I), and that Count II should be dismissed based on the *Noerr-Pennington* doctrine. The court therefore relinquishes jurisdiction over Count III, the state law antitrust claim. *See*28 U.S.C. § 1367(c); *Croplife America, Inc. v. City of Madison,*

432 F.3d 732, 733-34 (7th Cir.2005).

### III. CONCLUSION

For the foregoing reasons, the court hereby issues a Declaratory Judgment, pursuant to 28 U.S.C. § 2201, that (1) "Max" or "max" is a generic or common descriptive word commonly used as a prefix or suffix for business names, trademarks, products, and services, (2) Defendants do not have any exclusive rights to "Max" or "max," and (3) Amerimax is not infringing or diluting any valid rights of Defendants by using "Max" or "max" in its name and trademark "Amerimax." Also for the foregoing reasons, the court denies Roaring Fork's Motion to Dismiss as to Count I of the Amended Complaint, grants Defendants' Motions to Dismiss as to Count II of the Amended Complaint, and relinquishes jurisdiction as to Count III of the Amended Complaint.

IT IS SO ORDERED.

N.D.Ill.,2006.
Amerimax Real Estate Partners, Inc. v. RE/MAX Intern., Inc.
Not Reported in F.Supp.2d, 2006 WL 2794934 (N.D.Ill.), 2006-2 Trade Cases P 75,455, 83 U.S.P.Q.2d 1752

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.